| WILLIE F. WALTON | 21ST JUDICIAL DISTRICT COURT |
|---|---|
| VERSUS | PARISH OF TANGIPAHOA |
| | DOCKET NO.: 2013-0003330 "C" |
| DUSTIN GUIDRY, CLINT EDWARD GIVENS and A-PORT, LLC | STATE OF LOUISIANA |

*************************************************************************

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come defendants, A-PORT, LLC, DUSTON GUIDRY and CLINT GIVENS, who, pursuant to Louisiana Code of Civil Procedure Article 966, move this Honorable Court for summary judgment on the basis that there is no genuine issue of material fact that plaintiff, WILLIE F. WALTON, was A-PORT's "borrowed employee," therefore entitling A-PORT, LLC, DUSTON GUIDRY and CLINT GIVENS to statutory immunity from suit in tort by plaintiff, as set forth more fully in the attached Memorandum in Support of Motion for Summary Judgment.

WHEREFORE, Defendants, A-PORT, LLC, DUSTON GUIDRY and CLINT GIVENS, pray that the Court grant their Motion for Summary Judgment and dismiss all claims of plaintiff, WILLIE F. WALTON, against A-PORT, LLC, DUSTON GUIDRY and CLINT GIVENS, with prejudice, at plaintiff's sole cost.

This case is not presently set for trial. No testimony will be offered at the hearing on the Motion for Summary Judgment.

Respectfully submitted,

ALLEN & GOOCH
A Law Corporation

_____
S. BRIAN PERRY (#25209)
2000 Kaliste Saloom Road, Suite 400
P.O. Box 81129
Lafayette, LA 70598-1129
Telephone: (337) 291-1000
Facsimile: (337) 291-1200
Attorney for A-Port, LLC, Duston Guidry and Clint Givens

EXHIBIT A

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing instrument has this day been served on all parties through their counsel of record in this proceeding by:

( ) Hand Delivery (X) Prepaid U.S. Mail ( ) U.S. Mail/CMRRR

( ) Email (X) Facsimile ( ) Overnight Delivery Service

Lafayette, Louisiana, this 27th day of March, 2014.

_____
S. BRIAN PERRY

WILLIE F. WALTON

VERSUS

DUSTIN GUIDRY, CLINT EDWARD
GIVENS and A-PORT, LLC

21ST JUDICIAL DISTRICT COURT

PARISH OF TANGIPAHOA

DOCKET NO.: 2013-0003330 "C"

STATE OF LOUISIANA

*********************************************************************

## RULE TO SHOW CAUSE

IT IS HEREBY ORDERED, that Plaintiff, Willie F. Walton, appear and show cause, if any he can, on the ___ day of _____, 2014, at ____ o'clock _.m., why the Motion Summary Judgment of Defendants, A-Port, LLC, Duston Guidry and Clint Givens, should not be granted, dismissing all claims of Plaintiff, Willie F. Walton, against them in this action, with prejudice, at Plaintiff's cost.

Thus done and signed at Amite, Louisiana this ____ day of _____, 2014.

_____
DISTRICT COURT JUDGE


**PLEASE SERVE:**

**WILLIE F. WALTON**
*Through his attorney of record:*
J. Quentin Simon
1408 West Pinhook Road, Suite A
Lafayette, LA 70505

WILLIE F. WALTON　　　　　　　　　　21ST JUDICIAL DISTRICT COURT

　　　　　　　　　　　　　　　　　　　　PARISH OF TANGIPAHOA

VERSUS

　　　　　　　　　　　　　　　　　　　　DOCKET NO.: 2013-0003330 "C"

DUSTIN GUIDRY, CLINT EDWARD
GIVENS and A-PORT, LLC　　　　　　　　STATE OF LOUISIANA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

　　　　Defendants, A-PORT, LLC ("A-PORT"), DUSTON GUIDRY ("GUIDRY") and CLINT GIVENS ("GIVENS"), respectfully submit this Memorandum in Support of their Motion for Summary Judgment seeking a dismissal of all claims against them by plaintiff, Willie F. Walton ("Walton"), on the basis that plaintiff was A-PORT's "borrowed employee" under LSA-R.S. 23:1031(C), therefore entitling A-PORT and its employees, GUIDRY and GIVENS, to statutory immunity from suit in tort by Walton pursuant to LSA-R.S. 23:1032. Accordingly, all of plaintiff's claims in the above-captioned lawsuit against A-PORT, GUIDRY and GIVENS should be dismissed, with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

　　　　Walton, a payroll employee of Original USA General Labor, LLC ("Original USA"), was injured on October 31, 2012 while assisting A-PORT employees, GUIDRY and GIVENS, with the loading of a mud tank onto a trailer for one of A-PORT's customers. Walton has received, and continues to receive workers' compensation benefits from Original USA.

　　　　A-PORT is a shorebase facility located in Grand Isle, Louisiana that provides crane, forklift, storage and other services to its customers transporting inbound and outbound equipment and materials.[1] A-PORT employs its own staff of dispatchers, equipment operators and riggers, but sometimes experiences additional personnel needs when permanent employees are on leave or there is increased demand for services by customers.[2] A-PORT substitutes for permanent employees on leave and satisfies expanded labor needs to meet seasonal or short-term workload conditions by hiring temporary employees.[3]

　　　　Original USA is a labor company that supplies temporary employees, including equipment operators, riggers and laborers, to industry in south central Louisiana and other

---

[1] Affidavit of Louis Gotreaux, attached hereto as "Exhibit A."
[2] *Id.*
[3] *Id.*

states.[4] A-PORT and Original USA entered into a letter agreement dated June 20, 2012, pursuant to which Original USA agreed to supply qualified riggers to A-PORT at a fixed rate of $23.00 an hour.[5]

From time-to-time after June 20, 2012, A-PORT contacted Original USA under the letter agreement when A-PORT needed additional riggers.[6] From time-to-time after June 20, 2012, Original USA furnished riggers under the letter agreement that met A-PORT's requirements, at the times and location specified by A-PORT.[7]

Walton was one of the riggers supplied by Original USA to work for A-PORT.[8] Walton worked a total of 108 hours for A-PORT between October 20, 2012 and October 31, 2012.[9] At all times while Walton worked for A-PORT, A-PORT employees directed, instructed, and supervised Walton's work.[10]

Walton filed the instant negligence action against A-PORT, GUIDRY and GIVENS on or about October 28, 2013, seeking damages for injuries allegedly sustained in the October 31, 2012 tank loading accident. His original pleading contains the following pertinent allegation:

\* \* \*

3.

    That at all times hereinafter mentioned, Plaintiff was employed by Original USA General Labor, LLC (USA General), who **loaned** Plaintiff and his services as a rigger to A-Port. (Emphasis added.)

\* \* \*

A-PORT filed its Answer on or about January 30, 2014, which included the affirmative defense of the "borrowed employee" doctrine and accompanying tort immunity.[11]

On or about January 30, 2014, Walton filed a Motion for Leave to File First Supplemental and Amending Petition for Damages to amend Paragraph 3 of the original Petition for Damages, *inter alia*, to read as follows:

3.

    That at all times hereinafter mentioned, Plaintiff was employed by Original USA General Labor, LLC (USA General), who **selected and assigned** Plaintiff to provide his services as a rigger to A-Port. (Emphasis added.)

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] GUIDRY was served with the Petition for Damages on March 17, 2014. GIVENS was reportedly served with the Petition for Damages on March 4, 2014.

2

* * *

Allegations of negligence on the part of A-PORT, GUIDRY and GIVENS are consistent throughout the original and supplemental and amended Petition for Damages, and are fairly summarized as follows:

    a. Negligent supervision;

    b. Failure to provide plaintiff with adequate supervision;

    c. Negligent training of A-PORT employees;

    d. Negligent delegation of duty;

    e. Failure to provide a safe work environment;

    f. Failure to warn concerning unsafe conditions;

    g. Failure to instruct plaintiff concerning safe conduct of the work;

    h. Failure to take precautions to prevent unsafe workplace conditions;

    g. Failure to adopt policies and procedures to prevent injury to plaintiff;

    h. Negligent loading and unloading practices;

    i. Failure to properly train the crane operator;

    j. Failure to supervise the loading procedure; and

    k. Any and all other acts of negligence.

There are no intentional tort allegations asserted in either version of the Petition for Damages.

For the reasons set forth more fully below, A-PORT, GUIDRY and GIVENS maintain that a "borrowed employee" relationship existed between A-PORT and Walton such that plaintiff's tort suit filed against A-PORT, and its employees, GUIDRY and GIVENS, should be dismissed, with prejudice.

**SUMMARY JUDGMENT STANDARD**

The proper method for obtaining summary judgment is established under Article 966 of the Louisiana Code of Civil Procedure, which provides that the plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. The summary judgment procedure under La. C.C.P. art. 966, as amended in 1996, is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. Furthermore, the summary judgment procedure is now favored and shall be construed to

3

accomplish those ends. La. C.C.P. art. 966(2); *Collins v. Ferrell Gas, Inc.*, 96-810 (La.App. 3 Cir. 2/5/97); 689 So.2d 569; *NAB Natural Resources v. Williamette Industries, Inc.*, 28-555 (La.App. 2 Cir. 8/21/96); 679 So.2d 477.

Pursuant to La. C.C.P. art. 966(B), a judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. On motion for summary judgment, the burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion for summary judgment. *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078 (La. 6/30/00); 764 So.2d 37. This means that the non-moving party is no longer allowed to rely on the allegations of his or her pleadings in opposition to a properly-supported motion for summary judgment. *Oakley v. Thebault*, 96-0937 (La.App. 4 Cir. 11/18/96); 684 So.2d 488.

The issue of borrowed servant status is a question of law for the court to determine. *Fanguy v. Dupre Bros. Const. Co., Inc.*, 588 So.2d 1251 (La.App. 1st Cir.1991), *writ denied*, 594 So.2d 892 (La.1992); *Dustin v. DHCI Home Health Services, Inc.*, 95-1989 (La.App. 1 Cir. 5/10/96); 673 So.2d 356.

## LAW AND APPLICATION

The dispositive issue in this case is whether Walton was A-PORT's borrowed servant at the time of the October 31, 2012 accident under LSA-R.S. 23:1031(C). Pursuant to LSA-R.S. 23:1032, if Walton was a borrowed servant of A-PORT, A-PORT, GUIDRY and GIVENS are immune from tort liability and Walton's exclusive remedy is for worker's compensation benefits.

Louisiana Revised Statute 23:1031(C) provides:

> In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed.

4

The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.[12]

LSA-R.S. 23:1031.

The factors to be considered in determining the existence of a borrowed employee relationship include:

1) Who had the right of control over the employee and the work he was performing beyond mere suggestion of details or cooperation?

2) Whose work was being performed?

3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4) Did the employee acquiesce in the new work situation?

5) Did the original employer terminate his relationship with the employee?

6) Who furnished the tools and place for performance?

7) Was the new employment over a considerable length of time?

8) Who had the right to discharge the employee?

9) Who had the obligation to pay the employee?

*Maddox v. Superior Steel*, 00-1539 p. 7 (La.App. 1 Cir. 9/28/01); 814 So.2d 569, 574; *Sanchez v. Harbor Constr. Co., Inc.*, 07-234, pp. 4–5 (La.App. 4 Cir. 10/3/07); 968 So.2d 783, 786; *Hall v. Equitable Shipyard, Inc.*, 95-1754, p. 4 (La.App. 4 Cir. 2/29/96); 670 So.2d 543, 545–46.

Although no one factor is dispositive in determining borrowed servant status, the right of control factor weighs heavily in favor of borrowed servant status. *Andrew–Hong v. Gray Insurance Co.*, 06–93, p. 2 (La.App. 4 Cir. 11/2/06); 945 So.2d 124, 126. Companies which are in the business of loaning employees to companies that need to hire temporary workers are called "vocational lenders," and the companies hiring such workers generally receive the tort immunity of La. R.S. 23:1032. *See, e.g., Maddox*, 814 So.2d at 574 (citing WEX S. MALONE & H. ALSTON JOHNSON, III, *Workers' Compensation Law and Practice* § 58, Louisiana Civil Law Treatise (3d Ed. 1994)).

The following analysis of the borrowed employee factors unequivocally demonstrates that Walton was A-PORT's borrowed employee:

---

[12] LSA-R.S. 23:1032 provides, in pertinent part, that, except for intentional acts, the rights and remedies granted to an employee on account of an injury for which he is entitled to compensation under the Act shall be exclusive of all other rights, remedies, and claims for damages. The exclusive remedy is exclusive of all claims that might arise against his employer, or any employee of such employer.

5

1. **A-PORT had the exclusive right of control over Walton's work beyond mere suggestion of details or cooperation.**

At the time of Walton's October 31, 2012 accident, Walton was working for A-PORT and assisting A-PORT employees, GUIDRY and GIVENS, with the loading of a mud tank onto a trailer.[13] Walton's work schedule with A-PORT, including dates, times, and locations of work to be performed, was determined exclusively by A-PORT.[14] Walton received all instructions regarding his work responsibilities and performance of his duties at A-PORT from A-PORT supervisors.[15] At no time did any Original USA employees direct, instruct, or supervise Walton's work at the A-PORT facility, including on October 31, 2012.[16]

It is obvious that Original USA did not retain any supervision over Walton while he worked at A-PORT. This first, and most heavily weighted factor, supports a finding of borrowed servant status.

2. **Only A-PORT's work was being performed.**

The entire business of Original USA is the furnishing to other companies of temporary workers. Original USA had no separate work to be done. Its only function is to supply workers to other businesses.

Walton's work directly assisted A-PORT in providing transportation services to A-PORT's customers. All work performed by Walton at A-PORT was for A-PORT's benefit.[17] Original USA had no interest in any of the work performed by Walton for A-PORT other than charging A-PORT for Walton's hourly rate.[18] This factor too supports a finding of borrowed servant status.

3. **There was a written agreement evidencing an understanding between Original USA and A-PORT.**

A-PORT and Original USA entered into a letter agreement dated June 20, 2012, pursuant to which Original USA agreed to supply qualified riggers to A-Port at a fixed rate of $23.00 an hour.[19] From time-to-time after June 20, 2012, A-Port contacted Original USA under the letter agreement when A-Port needed additional riggers.[20] From time-to-time after June 20, 2012,

---

[13] Exhibit A.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

Original USA furnished riggers under the letter agreement that met A-Port's requirements, at the times and location specified by A-Port.[21]

Walton was provided to A-PORT pursuant to the June 20, 2012 letter agreement.[22] The letter agreement specifically states that A-PORT was to supply the workplace; that Original USA personnel were to perform their work under the direction and control of A-PORT; and that A-PORT was to provide adequate instructions, assistance, supervision and time to perform services requested of Original USA personnel.[23]

This factor clearly weighs in favor of a finding of borrowed servant status.

### 4. Walton acquiesced in the work situation.

Walton worked a total of 108 hours for A-Port between October 20, 2012 and October 31, 2012.[24] Walton made no complaints to A-Port regarding his work conditions, or the conditions of A-Port's facility, at any time.[25]

Undisputedly, Walton had time to assess the risks of his work situation A-PORT and was willing to accept those risks and the work conditions. This factor easily weighs in favor of a finding of borrowed servant status.

### 5. Original USA did not terminate its relationship with Walton, but that is not required for the borrowed employee doctrine to apply.

This factor evaluates the lending employer's relationship with the employee while the borrowing occurs. *Foreman v. Danos and Curole Marine Contractors, Inc.*, 97–2038, p. 11 (La.App. 1 Cir. 9/25/98); 722 So.2d 1, 6. This factor does not require a lending employer to completely sever its relationship with the employee. *Id.* The real inquiry is whether the lending employer placed any restrictions on the employee's work conditions. *Id.*

Again, the June 20, 2010 letter agreement specifically states that A-PORT was to supply the workplace; that Original USA personnel were to perform their work under the direction and control of A-PORT; and that A-PORT was to provide adequate instructions, assistance, supervision and time to perform services requested of Original USA personnel.[26]

This evidence establishes that Original USA relinquished complete control over Walton's work conditions to A-PORT. This factor weighs in favor of Walton being a borrowed employee of A-PORT.

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Exhibit A.

6. **A-PORT furnished the tools and place for performance.**

The tools and place for performance of Walton's work were furnished exclusively by A-PORT.[27] The accident occurred at A-PORT's facility.[28] Original USA did not supply any equipment or tools to Walton or A-PORT.[29]

This factor supports a finding of borrowed servant status.

7. **The new employment was over a sufficient length of time.**

Walton worked a total of 108 hours for A-PORT between October 20, 2012 and October 31, 2012.[30]

Courts have found one day of employment to be sufficient for a finding of borrowed servant. *See, e.g., Hall v. Equitable Shipyard, Inc.*, 95–1754, p. 4 (La.App. 4 Cir. 2/29/96); 670 So.2d 543, 545–46 (citing *Capps v. N.L. Baroid–NL Industries, Inc.*, 784 F.2d 615 (5th Cir. 1986).

Additionally, A-PORT was satisfied with Walton's work, and, had it not been for the accident, Walton would have continued to be employed at the A-PORT facility for as long as his services were needed and his work continued to be satisfactory.[31]

The fact that Walton worked 108 hours at A-PORT over a 12-day period, and was eligible for future continued work, is sufficient to satisfy this borrowed servant factor, or, at worst, is neutral.

8. **A-PORT had the right to terminate Walton's services at A-PORT.**

A-PORT could not fire Walton from Original USA. However, A-PORT had the right to remove Walton from A-PORT's facility at any time.[32] Additionally, the June 20, 2012 letter agreement specifically provides that unsatisfactory Original USA personnel would be removed from assignment upon notice by A-PORT, thereby terminating the employee's working relationship with A-PORT.[33]

The power to terminate an employee's services at a job site is enough to satisfy this factor. *See, e.g. Ledet v. Quality Shipyards, Inc.*, 615 So.2d 990 (La. App. 1 Cir. 1993)(citing *Melancon v. Amoco Production Co.*, 834 F.2d 1230 (5th Cir. 1988)).

This factor supports a finding that A-PORT was Walton's borrowing employer.

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

8

9.  **A-PORT provided the funds to pay Walton.**

Original USA issued paychecks to Walton, although this factor does not require that the borrowing employer pay the borrowed employee directly. It only requires that the borrowing employer "provide the funds" to pay the borrowed employee. *Ledet*, 615 So.2d at 994; *Hall*, 670 So.2d at 547.

In the instant case, Walton recorded his hours at A-PORT and reported them to Original USA.[34] Original USA submitted weekly invoices to A-PORT for the labor services of Walton.[35] A-PORT paid all of Original USA's invoices that included charges for Walton's work at the rate of $23.00 per hour.[36] The payroll summary produced by Original USA in response to a subpoena served by A-PORT indicates that Original USA paid Walton $11.00 per hour for regular time and $16.50 an hour for overtime, including the days that Walton worked for A-PORT.[37] Clearly, Walton was paid by Original USA using funds provided by A-PORT.

This and all of the other factors overwhelmingly support a finding that Walton was A-PORT's borrowed servant at the time of his accident on October 31, 2012.

The courts have found borrowed servant status in cases similar to the one at bar. In *Maddox v. Superior Steel*, 00–1539 (La.App. 1 Cir. 9/28/01); 814 So.2d 569, Melvin Maddox was employed by Western Staff Services ("Western"), a temporary employment service, and contracted to work for Superior Steel, Inc. ("Superior"). He was injured while working at Superior and filed a tort suit against Superior. Superior filed a motion for summary judgment, arguing that plaintiff's sole remedy was worker's compensation and that Superior has tort immunity as the employer of Maddox.

The trial judge granted summary judgment. On appeal, the First Circuit Court of Appeal analyzed the factors for determining borrowed servant status and upheld the trial court's ruling. In its opinion, the Court specifically noted: there was an agreement between Superior and Western regarding the lease of labor; Superior had the right of control over Maddox when he was at the job site; Superior furnished the tools and the place to perform the work; Maddox was doing work for Superior at the time of the accident; Western issued Maddox's paycheck, but Superior provided the actual funds from which Maddox was paid; and Superior had the right to terminate an employee sent to it by Western.

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*

9

In *Andrew-Hong v. Gray Insurance Co.*, 06-93 (La.App. 4 Cir. 11/2/06); 945 So.2d 124, Martin Andrew was doing carpentry work for ConstructionSouth, Inc. when he was killed in a work-related accident. Andrew's children filed suit against ConstructionSouth asserting that their father was employed by Labor Finders, Inc., a temporary labor service, at the time of the accident and that ConstructionSouth was liable in tort for Andrew's injuries and resulting death. ConstructionSouth and its insurer filed a motion for summary judgment claiming that Andrew was a borrowed servant, and, as such, the exclusive remedy of the plaintiffs was under the worker's compensation laws.

The trial court granted the motion for summary judgment. On appeal, the Fourth Circuit Court of Appeal affirmed the summary judgment after reviewing the factors for determining borrowed servant status and specifically noting that ConstructionSouth, not Labor Finders, supervised employees at the work site; ConstructionSouth provided the equipment and tools for the employees to use; and ConstructionSouth had the authority to fire the employees for dissatisfactory work. The appellate court noted that Labor Finders would issue the checks to the employees it provided to ConstructionSouth, but ConstructionSouth was the source of the funds used to pay the wages.

In *Manning v. Sampson*, 10-151 (La.App. 5 Cir. 10/12/10); 50 So.3d 908, plaintiff, Manning, was a payroll employee of Task Force Temporary Services, Inc., an agency that provided temporary labor to companies. Through Task Force, Manning began working at the Metals USA facility in May of 2005. On July 12, 2005, while working at the Metals USA facility, Manning suffered injuries when a beam fell from an overhead crane and struck him in the face. Manning filed a tort suit against Metals USA and Curley Sampson, who was operating the overhead crane, seeking damages for his injuries.

Metals USA and Sampson filed a motion for summary judgment asserting that Manning was a borrowed servant of Metals USA at the time of the accident, and, thus, his tort suit was barred by the exclusivity provisions of the Louisiana Worker's Compensation Act. The uncontroverted summary judgment evidence was that there was an agreement between Task Force and Metals USA, under which Metals USA would contact Task Force when it needed additional employees. Metals USA would identify the position needed to be filled, the requirements for that position, and the rate of pay for the individuals to be hired. Once an employee was sent by Task Force to Metals USA, Metals USA had direct control over the

employee and provided the equipment for the employee to do his job. Metals USA also had the right to terminate Task Force employees at any time while they were working at Metals USA. The trial court granted the motion for summary judgment.

Manning appealed. On review by the Fifth Circuit Court of Appeal, the panel was faced with the issue of whether Manning was Metals USA's borrowed servant at the time of the accident under LSA-R.S. 23:1030(C), therefore affording Metals USA and Sampson tort immunity pursuant to LSA-R.S. 23:1032. After reviewing the evidence *de novo* in light of the borrowed employee factors, the Manning court found that the totality of the circumstances clearly showed that manning was a borrowed servant of Metals USA at the time of the accident. Consequently, his lawsuit against Metals USA and Sampson was barred.

The facts of *Maddox, Andrew-Hong and Sampson* are virtually indistinguishable from the facts in the instant case as they relate to a proper borrowed servant analysis. Summary judgments were appropriate in each of those three cases, and defendants respectfully submit that the same result should obtain here.

## LIST OF LEGAL ELEMENTS NECESSARY FOR MOVANTS TO BE ENTITLED TO JUDGMENT

1. Tort immunity under the borrowed servant doctrine is an affirmative defense within the context of a tort action. *Billeaud v. Poledore*, 603 So.2d 754, 755 (La.App. 1 Cir. 1992), *writ denied*, 608 So.2d 176 (La. 1992).

2. As the parties asserting the affirmative defense, A-PORT, GUIDRY and GIVENS bear the burden of proof of establishing tort immunity on the basis of Walton's status as a borrowed employee of A-PORT. *Id.*

3. Defendants have supported their Motion for Summary Judgment with credible evidence that would entitle them to a directed verdict if not controverted at trial.

## LIST OF MATERIAL FACTS MOVANTS CONTEND ARE NOT GENUINELY DISPUTED

1. Walton, a rigger, was a payroll employee of Original USA.

2. A-PORT employs its own staff riggers, but sometimes experiences additional personnel needs when permanent employees are on leave or there is increased demand for services by customers.

3. A-PORT substitutes for permanent employees on leave and satisfies expanded labor needs to meet seasonal or short-term workload conditions by hiring temporary employees.

4. Original USA is a labor company that supplies temporary employees, including riggers.

5. A-PORT and Original USA entered into a letter agreement dated June 20, 2012, pursuant to which Original USA agreed to supply qualified riggers to A-PORT at a fixed rate of $23.00 an hour.

6. Original USA supplied Walton to work for A-PORT a total of 108 hours between October 20, 2012 and October 31, 2012.

7. Walton was injured on October 31, 2012 while assisting A-PORT employees, GUIDRY and GIVENS, with the loading of a mud tank onto a trailer for one of A-PORT's customers.

8. At all times while Walton worked for A-PORT, A-PORT employees directed, instructed, and supervised Walton's work.

9. The allegations contained in the action filed by Walton against A-PORT, GUIDRY and GIVENS sound exclusively in negligence.

10. Walton has not asserted intentional tort allegations against A-PORT, GUIDRY or GIVENS.

11. All facts contained in the Affidavit of Louis Gotreaux and exhibits thereto.

12. Walton was A-PORT's borrowed employee at the time of his October 31, 2012 accident.

## CONCLUSION

This case presents a textbook example of application of the borrowed employee defense to immunize a defendant from suit in tort. A-PORT needed temporary workers and hired Walton from Original USA, which is in the business of loaning employees. Walton remained a payroll employee of Original USA, but worked under the exclusive direction and control of A-PORT while at A-PORT. By virtue of this relationship, Walton became A-PORT's employee.

There is no genuine issue of material fact concerning Walton's status as a borrowed servant of A-PORT, and reasonable minds could not differ in the conclusion that the overwhelming weight of the evidence supports defendants' borrowed employee conclusions.

Given his status as a borrowed employee, Walton is barred from suing A-PORT, GUIDRY and GIVENS by LSA-R.S. 23:1031(C) and LSA-R.S. 23:1032 of the Louisiana Workers' Compensation Act.

Wherefore, defendants, A-PORT, LLC, DUSTON GUIDRY and CLINT GIVENS, pray that their Motion for Summary Judgment be granted, dismissing all claims of plaintiff, Willie Walton, with prejudice, at plaintiff's cost.

Respectfully submitted,

ALLEN & GOOCH
A Law Corporation

_____
S. BRIAN PERRY (#25209)
2000 Kaliste Saloom Road, Suite 400
P.O. Box 81129
Lafayette, LA 70598-1129
Telephone: (337) 291-1000
Facsimile: (337) 291-1200
Attorney for A-Port, LLC, Duston Guidry and Clint Givens

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing instrument has this day been served on all parties through their counsel of record in this proceeding by:

( )   Hand Delivery   (X)   Prepaid U.S. Mail   ( )   U.S. Mail/CMRRR

( )   Email           (X)   Facsimile           ( )   Overnight Delivery Service

Lafayette, Louisiana, this 27th day of March, 2014.

_____
S. BRIAN PERRY